Good morning, Honorable Justices of the Judges, I should say, of the Ninth Circuit. My name is Tom Riley. I'm Senior Assistant City Attorney for the City of Sparks. We are appealing this First Amendment case based on what we believe is improper law applied by the District Court judge. This case deals with kind of a narrow aspect of the First Amendment, and that is the right to sell merchandise in the public fora. And this particular case applies to essentially all types of merchandise. The First Amendment, as you are all aware, specifically states Congress shall make no law abridging the freedom of speech. And this is a speech issue in the law and in the law of this circuit. The initial point I'd like to make is that you have to be very careful with the terminology that's used in these First Amendment cases. I was initially very confused, and it took a lot of sorting out to figure out what these terms meant. But in the case law, the U.S. Supreme Court, this circuit and other circuits as well, used the word protected to mean it is protected from censorship. And that is almost unlimited. And, of course, we in the City of Sparks fully acknowledge the prohibition on any censorship of any artistic materials or expression, any type of expression. You get more narrow when you get into the term fully protected. And the case law refers to fully protected as essentially the equivalent of speech. If it is fully protected, merchandise, for example, has got to be given the equivalent status of speech, and it cannot be its sale as speech cannot be barred from the public forum. We, of course, at Sparks, acknowledge that and are not trying to bar any speech, whether it's pure speech or whether it's merchandise that contains speech from sale in the public forum. We have limitations on commercial speech, both in our city parks and in our downtown core area, which is a redevelopment area known as Victorian Square. Beyond those two areas, we have really very minimal restrictions. There's been no interest expressed in making sales anywhere else within the city. We do acknowledge the First Amendment. One of our parks is Deer Park. We opened it to the Pagan Festival, which are individuals and groups that worship pagan symbols. And it's their thing, but it's a religious rite, and we acknowledge that, opened it up, and allowed the sale of their merchandise. So this is not a case where the city is acting contrary to those who want to express their freedom of speech. We're trying to just make sure that speech is at issue. In these cases as well, I'm sorry. Sotomayor, this case seems to turn on whether there is a prior restraint or not. And the contention is that by having city officials evaluate to see whether it is or is not speech when it's an artistic piece constitutes a prior restraint. Can you address that? Absolutely. What we have in the Ninth Circuit is we have the case of Guyada-Vaishnava Society versus City and County of San Francisco. It's a 1990 case. It's been good law in this circuit for 17 years. It's been expanded on to the point where its main holding, which is that merchandise offered for sale in the public fora, has got to be message-bearing in order to qualify for sale in the public fora. Those messages come under four categories, political, religious, philosophical, and ideological, very broad categories. The City of Sparks, when confronted with this lawsuit, actually we heard about a similar lawsuit was filed against the City of Reno. We spotted what was going on over in Reno and enacted our own policies on the administrative level to deal with somebody that would come in and request to make sales of merchandise in the public fora. In doing so, we created a committee to review the merchandise proposed for sale to see if it contained on its face a message that fell into one of the four categories or if it conveyed that message either on its own or in combination with the speakers, the proponents' own statements pertaining to generally his organization's beliefs. It could also be individual beliefs. And we did that, Your Honor, because Gallardo de Cheneva gives local governments absolutely no guidance on its implementation. We had no idea how or what merchandise was going to qualify and what merchandise was not. If you simply take the proponents' viewpoint, everything is going to qualify. And there is a lot of merchandise out there that they would claim to be protected or, pardon me, fully protected, when in reality it is simply protected. What occurred on the prior restraint issue is, is that the ---- If the protected counsel, as contrasted to fully protected, what is the protection for the protected that is less than for the fully protected? Your Honor, that ---- there is a difference. The protection ---- when you see matters that are referred to as constitutionally protected, and the plaintiff's, the White's counsel uses these distinctions, uses these terms all the time, protected under the First Amendment, constitutionally protected, and similar terms. Those are terms that are referred to in the case law dealing with censorship. And they are incredibly broad. They are almost all-encompassing. Virtually everything falls under the prohibition against censorship, and almost everything is protected. Now, the term fully protected in the case law refers to, in the case law dealing with merchandise sales. That's my specific area I'm talking about. In that particular area, the term fully protected means that it is the equivalent of speech and, therefore, is entitled to the same protection as speech and must be allowed in the public forum. What occurred here in this particular case, the ---- White filed his lawsuit, never raised Gallaudet v. Schneeve. I found Gallaudet v. Schneeve. He raised it in their city ---- the suit against the city of Reno. I got their pleadings. I thought, oh, boy, we've got to do something over here because we're next. And so we put into place this review procedure because Gallaudet v. Schneeve gave us no guidelines on how to implement the four categories, political, religious, philosophical, or ideological, to determine whether or not merchandise qualified for sale. We did so and the ---- and applied it. We would have applied it if we had been given the opportunity. However, the artist, White, simply went to court, filed this lawsuit, and made a facial against our, at that point, policies. Those policies, by the way, have been put into the form of ordinances and rules and regulations for the Parks Department, which manages our city parks and our Victorian Square area. Tell me why there isn't a danger of prior restraint. Your Honor, there's no danger of prior restraint unless you find that the merchandise is ---- qualifies ---- unless you find that the merchandise qualifies under the First Amendment as fully protected for sale. The court, the district court, in order to ---- Gallaudet v. Schneeve did not make any presumptions that merchandise was automatically fully protected. There is no such automatic qualification as fully protected. Somebody has got to make that determination. In this particular case, the district court adopted its own new standard that it tacked on to Gallaudet v. Schneeve and said, okay, we have these four categories in Gallaudet v. Schneeve. Those categories must be interpreted in ---- to include both common understandings of the words that are used and any implicit, abstract expression that may be created or discoverable or ascertained from this merchandise. The court, the district court, then went one step further and said, okay, I'm ---- we're going to apply the new standard, implicit abstract expression, to the Ninth Circuit test, and we're going to also make a finding that all of Mr. White's paintings qualify as fully protected under the First Amendment. Only by instituting that new, uncalled for, extremely broad application to the Gallaudet v. Schneeve test could the district court find that these ---- that White's materials, White's paintings were fully protected. Once it found they were fully protected, it then could find that any restraint on their sale would be unconstitutional. The district court created its own means of finding unconstitutionality here only by violating this circuit's ruling in Gallaudet v. Schneeve. That's how the prior restraint was found. One of the big questions before this Court is whether or not local governments are going to be able to make the initial determination whether merchandise offered for sale in the public forum is fully protected on its face or in combination with the proponent's words, other pure speech, or whether the Court is going to say and hold, no, local governments, including, well, I guess all governments, Federal, State, county, and city, all own property that this could be applicable to, local government units cannot make that determination. Only the courts can make that determination. And I have seen statements in other circuits that essentially seem to indicate that courts are taking that direction. However, I did the Berry case, which is a Second Circuit case relied on by the plaintiff White to expand Gallaudet v. Schneeve to encompass all visual art as being fully protected. That court, even though I disagree with its holdings and I think that it goes against the precedent of this court, even that court held that local governments should be able to make some determination. Of course, any determination they would make would be preliminary. If the proponent didn't like it, would be subject to judicial review. What did the ---- A prior restraint if, let's say, that a painting is looked at and they say, well, I don't see any message in this. Well, it's the test in the Ninth Circuit is that it must be message-bearing,  that is the law of the circuit. The law, of course, as you're very well aware, must be followed by local governments. We tried to follow that law. And the only way we can follow that law is to try and find out or to analyze it and see if it's message-bearing. Tell me, is there any distinction between how you handle merchandise in the park and in the Victorian Square? Is there any distinction between the type of merchandise? Is there any distinction in the ordinance or the procedures? In Victorian Square, it has a committee kind of pre-established, right? The committee would apply both. It would apply the same standards to both areas. The same standards, but Victorian Square has pre-selected who it is you'd turn to to make that evaluation. The review committee handles all of the questions dealing with the First Amendment merchandise in the public fora. These are both public fora. Parks as well. Parks as well. Right. There are other, the briefs and the case has been full of a lot of the city's restrictions dealing with commercial merchandise. But in the Victorian, one of them has a list of criteria. It has a specific list of criteria, and the other seems more general. Is that accurate? I think that was the way that the district court analyzed it. In reality, they're the same standards. Well, what are the standards then? Well, the standards are, the review committee has several things that it must do and must follow. One, it must apply judicial precedent existing at the time of the review. Okay. It must use the dictionary definitions of the four terms used by the Ninth Circuit in Guayana-Vicenega, religious, political, philosophical, and ideological. Dictionary definitions have been the staple of interpretation of words forever and are very solid in the court. One other aspect they must do, use common sense, which is a short-hand term for logic. And there are things that are not logical out there, and common sense does have an application to these types of matters. And the other, to prevent any unbridled discretion being exercised by the court or, pardon me, the review committee, the committee has at least three members. No one person is going to make a decision. One of the members is an assistant city attorney. So the proper judicial precedent can be applied. And the other non-legal members of the committee can be overseen. Doesn't the decision of the committee have to be, don't you have to obtain a legal opinion regarding the decision whichever way it goes? Yes. And why is that important? That is for the purposes of judicial review. If the applicant wants to go to court, we've got a record. And just to protect the city. Well, if I understood it correctly, you obtain a legal opinion from the city attorney's office as to the decision made? Is that how it works? The attorney that is sitting on, well, let me explain. The attorney that is sitting on the panel on the review committee would be the one to make the legal opinion. It's on precedent that existed at the time. Yes. And the application of the definitions of the four categories. Also in that there's a review committee, there's a prompt administrative appeal to the city manager. And, of course, judicial review is available. So I think we're trying to do whatever we can to prevent unbridled discretion. We're trying to implement Diodoveshneva as best we can. If the way that the district court analyzed this case was as if White had done nothing wrong. Mr. White never submitted one of his paintings to the city, to any city employee. Well, he's doing a facial challenge. Exactly. Exactly. He made a facial challenge prior to the time that any court or any city governmental agency had ruled that his paintings were fully protected. So if you can make a facial challenge any time you want, you're going to be buried in cases. There's specific authority that I outlined in my September 1, 2006, Rule 2628J supplement that specifies clearly that unless the constitutional right is firmly established, you cannot simply run into court and make a facial challenge to a law. Well, he's claiming that this is prior restraint, and there's a lot of law about that. Prior restraint? Mm-hmm. I know that's what they're claiming. Again, I would simply reiterate that the only way the judge could find prior restraint was by applying his own new implicit, abstract standard, find that the matters are within that extremely broad category that includes a lot of things that are not speech. And that's the only way he could find a prior restraint. He can't find a prior restraint by the city because the city didn't do anything. The city's laws on its books were legitimate. But he never followed them. Okay. We've exhausted your time, but we'll still leave you a minute for rebuttal. And we'll hear from Mr. White's counsel. Thank you. My name is Terry Kaiser Cooper. I represent Appelli Stephen White. There are five reasons why the district court opinion should be affirmed. Mr. White's paintings are purely expressive communication. In purely expressive communication, no particularized message is required. SPARC's policies regarding its committee represent a or a content-based restriction on speech. SPARC's preapproval committee is a prior restraint on speech. And Mr. White's paintings cannot be dismissed as mere commercialism. While no case of the ---- Are you certain? Let me pause there for a moment. Can there be a form of something that takes a visual display that doesn't qualify as protected expression? I'll take the easy one first. Take pornography. Even though there's a visual expression there, I take it you would concede the city has the power to limit somebody who's seeking to sell pornographic photographs in the park. Of course. There's a long history that pornography is not protected by the First Amendment, so certainly. So short of the category that's clearly outside the First Amendment, what level of expression ---- I mean, is there a purely, for the moment I'll call it commercial art, the things you can buy for $15 someplace? Is there a kind of art that might be not pornographic, but not necessarily qualified for First Amendment protection because it's not expressive? Well, there's two ways of looking at it, and you can take the way the Master of Incensio case looked at it. It looked at, to find out whether certain items, in that case it was graffiti art on hats and on T-shirts. And the question was, were these protected? The court very simply said, does this item contain an expressive component? If so, is that the dominant purpose of the item? If yes to that, then it has a high claim to First Amendment protection. If no, it can be regulated as mere commercialism. So at least at some point there's something that can be regulated as mere commercialism. Oh, absolutely. Once you're at that point, how is it, what can the city do to say, okay, you're on this side of the line and you're on that side of the line? Well, certainly reasonable time, place and manner restrictions are appropriate. In this case, time, place and manner restrictions have never been raised. That's an entirely separate category. Okay. So I will concede that, and the city hasn't tried to go down that road, and I don't say they're trying to go down that road. The question is, their position, and I'm sympathetic on one level in that they don't want to turn the park into a shopping mall. And if there's something that isn't deserving of First Amendment protection, they're trying to control that. Even as they're purportedly trying to say anything that does qualify for First Amendment protection, okay, we'll step back. We won't do anything, not even time, place and manner. So they're trying to find the line someplace and apply the line. Is there any way they can do that that wouldn't constitute a prior restraint under the argument that you've offered? Not for items that are purely expressive communication. Those are in another group. That assumes the conclusion. Pardon? How are we supposed to determine or what's the city supposed to do to say what's purely expressive and hence qualifies for protection and what's not? I'm mixing a couple of things here. Let me take them apart. One of your criticisms of the city's policy is that it's applying the wrong standard. I understand that. I'm moving to the other part. That is the procedural one, the prior restraint argument. What is it the city can do if it applied the right standard? Would the process that they've got be inappropriate? Or would the process be appropriate if they applied the standard that you say they should? The process would be inappropriate under any scenario. Well, no, that's not quite true. I believe that they could use what do what the Mastro Vincenzio court did or what the Berry court did. In both of those courts, they were faced with a determination of how to regulate, if to regulate, what to do with expressive materials. Some expressive materials that were purely communicative and others that were intertwined with a message but had an intrinsic value that was other than pure communication. In Mastro Vincenzio, they used this dominant purpose test. Sparks could do the same thing. Sparks doesn't need to have any confusion. They can look at an item and say. Except they can do that. Is the process they're trying to employ defective? If they apply the standard that you're advocating, would it be okay for them to say, okay, just come in and give us your application and let us know that you're expressive and if you're expressive, we'll step back and the coast is clear. But if you're not expressive, we were going to make the evaluation and if we don't think that applying the standard you qualify, then we're going to say no and deny your permit. Well, I think it's easier than that. I mean, I would also suggest that an easier scenario would be to adopt what Berry did in New York, which was say all sculpture, all paintings, all photographs and all prints are purely expressive communication. They don't qualify. Then look at everything else. And if they did everything else. I'm trying to disassemble the case. It seems to me we've got a lot of talk about prior restraint and the process used by the city. For me, the issue is much more as to what the expression standard is, what qualifies for protection. Because if the city's position is actually a very simple one. If it qualifies for First Amendment coverage, if it's expressive, we'll step back. We're not going to try to impose time, place and matter. Most of the city or not municipality, the local government problems that I've seen are where they've got time, place and matter restrictions with unbridled discretion and somebody's deciding whether we're going to let you do it at this time or that time and so forth. The city here is not trying to do any of that. They're making a very simple first tier decision, does this qualify protection or not? And understanding that you've got an argument and that the district court found they applied the wrong standard. But if they apply the right standard, are you really objecting to the process that they're using to apply the standard? Yes, we are. Because you can't apply that standard to purely expressive communication. And that's what they're doing here. What this case is really about is that the city of Sparks insists that an expressive communication has to deal with expressly religious, political, philosophical or ideological subject matter. There is no case, and there are a whole host of First Amendment cases we deal with that say that the First Amendment protects more than political speech and verbal expression. We've got film. We've got music. We've got peaceful marches. We've got theater. We've got parades with and without banners. We've got all kinds of things going on. But in none of these cases does the Court say that the message used in any of those mediums must be exclusively about religious, political, philosophical or ideological subjects. And that is what Sparks insists on. So you have something purely expressive, like Mr. White's paintings. Painting is a medium. It's a way to express ideas. It's like film. It's like theater. It's like music. Painting can be as wide-ranging in its expression of ideas as any book or any speech. There's no bright line, and the Court found this, and it's true, between verbal and visual expression. And you cannot have a committee trying to decide whether or not something is religious, political, philosophic or ideological. Verbal and visual expressions don't, they don't separate. Look, Sparks took the Ninth Circuit precedent and said, we want to avoid trouble. We'll just take what the Ninth Circuit told us to do, and that's what we'll do. So they adopted a standard that they thought complied with the Vishnada case. Isn't that what they tried to do? Well, they misread Vishnada. They totally misread it. Sparks wrongfully asserts that Vishnada mandates to have First Amendment protection. All items, underscore all items for sale, must have a religious, political, philosophic, ideological message, and that's not what the case stands for at all. Sparks has misread it. Godea or Vishnada, however we call it here, addresses only items that have an intrinsic value other than communicative. In that case, the San Francisco ordinance said, we're going to take out all books, all prints, all bumper stickers. We're not even going to rule on those because they're not up for consideration. It only looked at items that had an intrinsic value other than communicative. And it said those items have to have a religious, political, philosophic or ideological message to be protected. And in this case, what Sparks has done is throw the communicative stuff in with the mugs and the T-shirts and the jewelry. Mr. White's paintings are purely communicative. They have no intrinsic value other than to express his ideas. They are his ideas. Mr. White uses paint instead of words to convey his message. A T-shirt. Well, there are more than merely his expression, because if he's asked to articulate his feelings, does he get paid by anybody for having articulated his feelings? What people are willing to pay for is the particular expression in a visual manner. So it's not simply what you've translated. And it reflects a limitation of language. You may not be able to articulate in words everything he's trying to express in a painting. But it's the painting part of it, the visual, the aesthetic satisfaction that someone may receive from it, not necessarily the specific message or expression that the artist is trying to create. There is no difference in purely communicative expression from being paid and not being paid. That U.S. Supreme Court case, which I could look up in a second, is absolutely clear. I'm saying what people are willing to pay for. It's not necessarily the idea that can be articulated. It's the visual idea or expression. I would say that there is absolutely no difference. You can look at a painting, for example, a painting with words on it, and you have Robert Indiana and his painting, which has words on it. What is that? There's no neat separation, nor has there ever been, between how you can communicate ideas. You can have ideas that, as Robert Indiana's love painting, have words. You can have images that convey stories. But what Gaudia is talking about is items that have intrinsic value other than purely communicative. If you've got a T-shirt, for example, of President Bush on it with a grimace, it may convey that the designer of the T-shirt didn't like President Bush. But no matter what, that item is a wearing apparel, and it can be used for modesty, for warmth, or a variety of things that we use wearing apparel. That's what Gaudia was talking about is the intertwining of ideas with items that have intrinsic value, separate and distinct from ideas. And when those are protected, it never, ever addresses items that are purely expressive. A coffee cup, save the whale's logo on it, may convey the designer's feeling about the environment. But it has an intrinsic value as a drinking vessel. And that's what Gaudia was about. It's when are those items, the coffee cup with the save the whales, the T-shirt with presidential characters on it, when are those items protected? It never, ever talks about items that are purely expressive because it couldn't. We believe that the district court reached the correct result, but used some faulty reasoning. The district court expressed in its view some confusion. It held the distinction between art and merchandise was at times a blurry line, and it said that the distinction between protected expression and unprotected merchandise may be arbitrary. But it held Mr. White's paintings were protected because they contained a particular message. We think that's faulty because the district court didn't say how it reached that conclusion. In the supplemental excerpts of record, we have included samples in color that were provided to the district court of his paintings. And I have one here. The district court didn't say what standards it used. It didn't say what content should be looked at. It didn't say how it reached its conclusion. To resolve this case here today, all this Court needs to do is look at Mr. White's paintings and determine that they do have a religious, political, philosophical identity. When I look at them, I see a man who wants to sell a landscape painting in a park. That's what I see. I see a man who wants to sell a landscape painting. Well, there are many ways to see whatever. I mean, that may be your view. You know, Mr. White's feelings as expressed. His paintings all deal with the environment. They all deal with mountains and trees and lakes. He holds very dear the environment. He holds it sacrosanct in his mind. It is not his ideas. It's not somebody else selling Mr. White's work. This is his ideas, his speech, his ideas about the beauty of the environment and how our country is destroying the environment. I'm not Mr. White. I'm explaining to you what his feelings are. Okay. An artist does that. That's what artists do. Okay. Then why is that protected? It's protected because ideas are protected under the First Amendment. The fundamental purpose of the First Amendment is to protect all expressive, peaceful expressive activity and to prohibit the penalizing, prohibit the evil of penalizing people for their content. So if I knit socks and I want to sell them in the park, that's the same thing? Socks have an intrinsic value. They're wearing apparel. You put them on. If you have socks with the Save the Whales logo on it. Well, it's just a plain old pair of socks I darned. They're not protected. They're wearing apparel. Traditionally, music, painting, theater, parades, these are expressive conduct. We're saying that painting is no different than movies, theater, poetry, books. They contain ideas. They're expressive. The lines may be so. Well, they can be, frankly. Sometimes paintings are put on the wall to cover a hole. I mean, paintings are in some circumstances created like factory art, where they've got people that are selling these stores that sell paintings for $49 to provide a little color on the wall. I doubt that the artist's expression has much to do with any of that. It may be just impossible to draw lines, but the notion that anything that comes under the rubric art is inherently fully protected or is inherently expression, that's kind of a tough sell. I mean, some of it really isn't expressing anything. It's expressing a way to make a little money. Well, that may be your view. And maybe when you look at the scribbles of Jackson Pollock, that's all you see is childhood scribbles. People see all kinds of ideas in art, and what we want to stay away from is evaluating that. We're hoping this Court will find that Mr. White's paintings are his medium of expression. We hope this Court will find Mr. White's paintings are his ideas in visual form. We hope this Court is going to find that his ideas in paint are protected by the First Amendment, and his ideas in paint do not have to contain a particularized message, religious, political, ideological, or political. We think you can find that easily. You can look at his paintings of Sacred Buffalo. You stay behind the mic or your recording will not come through. I'm sorry, Your Honor. I'm sorry. No, he can display his paintings all he wants and can display his ideas or express his ideas. When he goes into business and makes a living out of his ideas, that's when the line gets a lot harder. Well, Picasso made a living off of his art. People who sell books make a living off of their books. It's no difference. It's all expressive activity. And let me say one word about Sparks' preapproval or prior restraint committee. Sparks says it needs no standards other than a dictionary or common sense. We submit this is ludicrous. Well, then it doesn't ñ but it also requires the committee composition to include the city attorney and to follow legal precedent. Now, is that not helpful? No. The Godiva case offers no help to the city of Sparks whatsoever because Godiva does not mention expressive activity. It totally excludes it. It only deals with items that have an intrinsic value other than communication. It has ñ it deals only with jewelry, with T-shirts, with stuffed animals. That's all Godiva deals with. It doesn't deal ñ it exempts paintings. It exempts books, bumper strips. All items that are purely expressive are exempted by Godiva. Godiva has very little relevance to this case. And what's wrong with Sparks' dictionary definitions are, please tell me how this would apply. Under religion, and this is under the excerpts of record of Sparks, 272 to 263, they give the dictionary definition. Religion, the service and worship of God. So a painting of Jesus Christ would be all right as long as it's clearly recognizable. A painting of a church, this cannot be so. There are many things that may convey religion that may not be easily discernible to committee members. What about people sitting around a table celebrating a feast day? That may be religious or it may just be people sitting around a table with a feast day. You have something like a ñ Now get to the mic. Do not speak away from the mic. You have something like Picasso's dove, for example, universal symbol of peace. Or is it just a bird? What would the Sparks Review Committee say? You have something like Andy Warhol's soup can. Is it a soup can or is it a comment on commercialism? What is it? Under political, it says of or relating to government. Well, is the dove of or relating to government? Picasso's dove was universal symbol for peace and for the end of the Vietnam War. Many would say that this was not a bird that is purely political. That is why we cannot draw these lines with art and say what is political, what is religious, what is ideological, what is philosophical. Under philosophical, it says of or relating to philosophers or philosophy. This is impossible to discern. The drawing that I held up of Robert Indiana with the words love on it. Many people say love is about philosophy. Would the committee? We don't know. Ideological, it says a systematic body of concepts. I think we've got your point. Is there anything else you want to add in the negative 44 seconds you have left? We would add that all prior, that this is an unconstitutional prior restraint because there are no standards other than common sense in the dictionary. And that by itself is absolutely insufficient as a matter of law. Without standards, the Sparks officials are free to interpose their own personal judgment, their personal opinions. There would be no predictability whatsoever. Sparks would find the dove, would find Andy Warhol's comments of commercialism on soup cans all unprotected speech. We cannot allow that. The First Amendment has to be allowed for expression of a multitude of ideas. Thank you. Mr. Riley, I think you have another minute. So you do. I'll try not to exceed it. A couple of points that Mr. Kaiser-Cooper made. She's claiming that the intrinsic value test was inherent in Gallaudet-Vishneva's ruling. The inherent, the intrinsic value test, which deals with whether or not products have an intrinsic value other than art, was a test that was put in by the San Francisco Ordinance, and it was rejected by the Court in the Gallaudet-Vishneva decision. This particular issue is the subject of another Rule 28J or, yeah, 28J letter that was submitted by the appellate, Mr. White. And we have briefed that in that letter. She's 100 percent wrong on that point. It's our position that any piece of merchandise could have expressive value. And expressive, I mean by expressive under the Ninth Circuit test. It could be a coffee cup. I have a coffee cup in my office that says, my lawyer can beat up your lawyer, which I thought was kind of cute. But I'm not sure it expresses any First Amendment thing, but it is kind of cute. The coffee cup that has a whale tail on it for Greenpeace, I think that clearly would qualify. The dove, these things have inherent, they have inherent, what's the word I'm looking for? They have inherent values, inherent self-definitions. A dove, for example, in the Vietnam War, very clear self-definition of peace without if it was the right dove in the right, especially in the right posture. I think we've got your point, even if the word's eluding you. Appreciate your argument. Thank both counsel for the argument. The case just argued is submitted. That concludes our calendar for this morning. Thank you very much. Thank you, Your Honor.
judges: B. Fletcher, Clifton, Shea